[EDITORS' NOTE: REVIEW GRANTED BY THE CALIFORNIA SUPREME COURT; PURSUANT TO RULES 976, 976.1 and 979 OF THE CALIFORNIA RULES OF COURT, THIS OPINION IS NOT CERTIFIED FOR PUBLICATION. THE SHADED TEXT BELOW REPRESENTS THE ORIGINAL OPINION AND IS PROVIDED FOR REFERENCE PURPOSES ONLY.]
This is an appeal from a judgment entered on a jury verdict awarding damages to plaintiff Michael Woolery Delgado. On appeal, defendant Trax Bar Grill (Trax) contends that it had no legal duty to prevent the criminal assault that caused Delgado's injuries. We agree and will reverse the judgment. As a result, the cross-appeal, which raises issues concerning the measure of damages, becomes moot. *Page 264 
 Facts and Procedural History
Although many of the preliminary facts and details of the incident were the subject of conflicting testimony, the evidence established that Jacob Joseph followed Delgado out of Trax, a restaurant and bar in Turlock. He confronted Delgado and, when it appeared there would be a fight, Joseph called out in Assyrian to other men in the parking lot. These men, some 12 to 15 in number, began beating and kicking Delgado. He escaped briefly and ran from the premises. One of the men caught up with him and tackled him. The beating and kicking resumed, and then Joseph hit Delgado in the head several times with a baseball bat. Delgado was rendered unconscious and was hospitalized for 16 days. Joseph was arrested at the scene and subsequently was convicted of felony assault on his plea of no contest.
Delgado sued Trax and others. The matter came to trial against Trax only on a premises liability theory. The jury returned a special verdict finding that Trax was negligent, its negligence was a cause of Delgado's injury, and Trax was 100 percent at fault. The jury awarded economic damages of $81,391.61 and awarded nothing for noneconomic damages (including pain and suffering). Judgment was entered accordingly.
Trax filed a timely notice of appeal; Delgado cross-appealed.
 Discussion
"The existence of a duty is a question of law for the court. [Citations.] Accordingly, [on appeal] we determine de novo the existence and scope of the duty." (Ann M. v. Pacific Plaza Shopping Center (1993)6 Cal.4th 666, 674 (hereafter Ann M.).)
"[A] duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (Ann M., supra, 6 Cal.4th at p. 676.) "[F]oreseeability is a crucial factor in determining the existence of duty." (Ibid.)
Prior to the Supreme Court's decision in Ann M., California required that "foreseeability, for [premises liability] purposes, could be established despite the absence of prior similar incidents on the premises. [F]oreseeability should be assessed in light of the `totality of the circumstances,' including such factors as the nature, condition and location of the premises." (Ann M., supra, 6 Cal.4th at p. 677.)
In Ann M., however, the Supreme Court "refined" (Ann M., supra,6 Cal.4th at p. 678) the rule, as follows: "we conclude that a high degree *Page 265 
of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landlord's premises." (Id. at p. 679.) In a footnote, the court added: "It is possible that some other circumstances such as immediate proximity to a substantially similar business establishment that has experienced violent crime on its premises could provide the requisite degree of foreseeability." (Ibid. at fn. 7.)
In the present case, Trax contends there was no evidence whatsoever of prior similar criminal assaults on its premises or in the vicinity and that the gang assault was not foreseeable as a matter of law. Delgado contends the foreseeability standard of Ann M. is inapplicable in this case because Trax is a bar, not a shopping center, and Trax, unlike the shopping center in Ann M., already had undertaken to provide security on the premises. For reasons stated below, we find the Ann M. standard applies to the present case and that this standard requires a finding that Trax had no duty to prevent the type of crime that occurred in this case.
Premises liability analysis is the same for bars as for other types of business. (Lopez v. Baca (2002) 98 Cal.App.4th 1008, 1017.) Thus, the issue in a case involving an assault at a bar still is the "genuine foreseeability" of the type of crime at the particular locale. (Ibid.; see Sharon P. v. Arman, Ltd. (1999) 21 Cal.4th 1181, 1199.) "The dispositive issue remains the foreseeability of the criminal act. Absent foreseeability of the particular criminal conduct, there is no duty to protect the plaintiff from that particular type of harm." (Alvarez v.Jacmar Pacific Pizza Corp. (2002) 100 Cal.App.4th 1190, 1212.)
We state the obvious: there are dramatic differences in the public safety experience of various kinds of business and even among business of the same kind located in different neighborhoods, cities, and parts of the state. Nevertheless, these differences are fully accounted for in the prior similar incidents standard. There is not a different standard for raucous businesses or those in "tough" parts of town; application of the common standard, however, will result in differing levels of duty to provide security in different situations, since the previous experience of the particular business will result in greater or lesser foreseeability of particular types of criminality. (See Sharon P. v. Arman, Ltd.,supra, 21 Cal.4th at p. 1195.)
In the present case, the evidence established that Trax had experienced ordinary "bar fights" inside and outside the premises. It did not establish *Page 266 
prior instances either of gang fights or of gang attacks upon individual patrons. The present attack was not foreseeable.
Delgado fares no better with his contention that the existence of some level of security at Trax removes this situation from the foreseeability analysis of Ann M. In Sharon P. v. Arman, Ltd, supra, 21 Cal.4th 1181, the landowner had undertaken to install a security camera in the parking garage where the plaintiff was assaulted. The camera was not operational on the date of the crime. The Supreme Court, however, declined to impose a different standard where the landowner had undertaken, and then failed to maintain, security measures, stating: "It is difficult to quarrel with the abstract proposition that the provision of improved lighting and maintenance, operational surveillance cameras and periodic walk-throughs of the tenant garage owned and operated by defendants might have diminished the risk of criminal attacks occurring in the garage. But absent any prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location, we cannot conclude defendants were required to secure the area against such crime." (Id. at p. 1199.)
Under the Ann M. analysis, the level of security a landowner must provide must remain tied to — and conditioned upon — the foreseeability of a particular type of criminal activity at the premises. Ann M. does not permit the imposition of a limitless duty upon a business owner to prevent all criminal conduct simply because the business owner has undertaken to provide some security at the premises.
In the recent case of Mata v. Mata (2003) 105 Cal.App.4th 1121, 1128, the court took the view that "Ann M. is inapposite because Mata employed a security guard and that guard was on duty the night of the shooting. The duty to protect had already been assumed and therefore the issue of foreseeability becomes irrelevant." Relying on traditional common law standards for tavernkeeper liability and for the duty imposed on security guards, the Mata court held that a patron shot at the bar "need not prove the proprietor had notice of prior similar acts." (Id. at p. 1129.)
We disagree. For reasons stated above, we believe Sharon P. v. Arman,Ltd, supra, 21 Cal.4th 1181, is inconsistent with a conclusion that the premises owner "assume[s] the duty to protect one's patrons while on the premises" (Mata v. Mata, supra, 105 Cal.App.4th at p. 1129) simply by hiring a security guard or implementing other security measures. Rather,Ann M. requires that the court first determine the issue of foreseeability of the type of crime involved — and thus the existence of a duty — before the jury is *Page 267 
permitted to determine "whether the guard acted reasonably under the circumstances; whether the employer was negligent in the hiring, retention, supervision or training of the guard; and whether the actions or inactions of the guard and/or employer contributed to appellants' injuries" (Mata v. Mata, supra,105 Cal.App.4th at p. 1129). If a terrorist has never flown an airplane into a building in Fresno, it simply does not matter, from a liability perspective, whether a security guard has been trained in antiterrorism strategy or whether he mutely watches in shock and disbelief as the airplane approaches. The unforeseeable criminal acts of third persons do not impose a duty on premises owners to prevent such acts. (See Ann M.,supra, 6 Cal.4th at p. 679.)
While the foregoing, obviously, is an extreme example, the present circumstances are different only in degree and not in kind: The evidence in this case showed that 12 to 15 men were lying in wait for Delgado outside Trax, hidden from view. They came out at Joseph's command and immediately began their assault, reflecting some prior agreement as to what their role was. Nothing even remotely similar had ever happened at this bar before; a coordinated gang assault on an individual patron was not foreseeable in the absence of prior similar crimes. Thus, the negligence analysis does not reach issues such as whether Trax should have hired more than one security person or should have had a different intervention policy for its security staff.
Delgado argues that the evidence permitted the jury to conclude that the men were visible and loitering in the parking lot as a group, contrary to Trax's acknowledged policy of dispersing such gatherings. The only evidence of such a gathering came from Joseph's testimony, and was contradicted by Delgado, his wife, and a Trax employee. In any event, there is no claim that the crowd — if it existed — somehow conveyed its intentions prior to the assault. The evidence does not suggest the presence of a menacing mob awaiting Delgado in the parking lot. Accordingly, we have no occasion in the present case to consider how a perceived threat of harm to a patron might change the duty analysis, even in the absence of prior occurrences similar to the present threat. (See Marois v. Royal Investigation Patrol, Inc. (1984)162 Cal.App.3d 193, 202.)
Similarly, Delgado contends the evidence permits a conclusion that Delgado's wife told a Trax "bouncer" that there might be a fight and "[n]evertheless, nothing was done to thwart the attack." Even granting full credence to this extremely problematical evidence — evidenceDelgado hotly contested at trial — there was no evidence whatsoever that Trax was made aware its patron would be jumped by a large group of assailants lying in wait in the parking lot. In the absence of such evidence, we have no occasion to address *Page 268 
the manner in which the foreseeability of a specific incident might supplant the foreseeability analysis required by Ann M.
We conclude the evidence in this case, as a matter of law, was insufficient to establish a duty on the part of Trax to prevent or intervene in the gang attack on Delgado. As a result, the cross-appeal concerning the measure of damages is moot.
 Disposition
The judgment is reversed. Trax is awarded its costs on appeal.
We Concur:
LEVY, J.
GOMES, J. *Page 269